# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KIMBERLY ANN CLARKE,

    *Plaintiff*,

v.                                                                              CASE NO. 13-CV-11534

CAROLYN W. COLVIN                                DISTRICT JUDGE LINDA V. PARKER
Commissioner of Social Security,              MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that the Commissioner's determination that Plaintiff is not disabled lacks substantial evidence. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that the claim be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g).

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 15.)

Plaintiff Kimberly Ann Clarke was forty-five years old at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 88, 399.) Plaintiff worked continually from 1990 until her first alleged disability onset date of February 15, 2005: she was a cleaning supervisor, receptionist, civil service clerk, accounting clerk, and a manufacturing technician. (Tr. at 59, 99.) Plaintiff later amended her onset date to September 11, 2007. (Tr. at 311.) On July 13, 2005, Plaintiff filed the present claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401 *et seq.* (Tr. at 59-61.) Plaintiff's insured status ran through December 31, 2009. (Tr. at 20, 263.)

Plaintiff's claim has jostled back and forth in the Administration, for one reason or another, since 2005. The Commissioner denied the claim at the initial administrative stage. (Tr. at 28.) Various diagnoses were considered, including muscle and ligament disorders, fascia, rheumatoid arthritis, and other inflammatory arthropathies. (*Id.*) On September 9, 2005, Plaintiff requested a hearing before an administrative law judge ("ALJ") to review the decision. (Tr. at 39.) A video teleconference hearing was scheduled for July 27, 2007. (Tr. at 46.) In a letter dated May 17, 2007 from her attorney, Norton Cohen, Plaintiff informed the Commissioner she wished to appear at the hearing in person, not by teleconference. (Tr. at 57.) Plaintiff also sent a form confirming her intention. (Tr. at 58.)

Apparently, the letter never entered the file, (Tr. at 171-72), and ALJ Alexander Weir III held the hearing on July 27, 2007. (Tr. at 31-32.) When Plaintiff did not appear, the ALJ dismissed

her request for a hearing. (Tr. at 31-32.) Plaintiff requested the Commissioner to set the dismissal aside, (Tr. at 171-72), and the Appeals Council remanded the case for a hearing. (Tr. at 167-70.)

ALJ Henry Perez, Jr., convened the hearing on November 24, 2009 to consider her application for benefits de novo; Plaintiff appeared with her attorney and testified. (Tr. at 261.) On January 26, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 267-68.) Plaintiff requested a review of the decision on January 29, 2010. (Tr. at 276.) The Appeals Council did not receive the hearing recording and, when it requested the recording from the local office, it noted that "[i]f the hearing recording is not received, the Appeals Council will have to remand the file back to [the local] office for lost/inaudible recording." (Tr. at 278.)

The recording remained missing and consequently the Appeals Council was "unable to determine whether the decision is supported by substantial evidence." (Tr. at 273.) The Council vacated and remanded, providing Plaintiff "the opportunity for a new hearing and . . . the opportunity to submit additional evidence, including any available medical evidence." (*Id.*)

ALJ Perez held the hearing on October 3, 2012, (Tr. at 401), nearly three years after the previous hearing and decision. (Tr. at 261-68.) The ALJ began the proceeding by noting that the claim "was returned because the file was lost and [the Appeals Council] couldn't re-develop the evidence." (Tr. at 401.) He proceeded, "[n]ow unless there is anything new that has transpired between the last date of hearing, which was November 24th of '09 to today, the record is pretty much before me now." (Tr. at 401.) He asked if Plaintiff had anything to add. (*Id.*) Plaintiff's counsel responded he was "satisfied with what's in the file," that is, the Record. (Tr. at 402.) Nonetheless, he asked Plaintiff a few questions about her recent medications and potential treatments. (Tr. at 403-04.)

The ALJ then questioned the VE, who concluded that under the ALJ's hypothetical limitations, Plaintiff could not perform her past relevant work but could take jobs as an inspector (2,000 positions in southeast Michigan, 4,000 in the state) and a gate guard or lobby attendant (2,000 positions in southeast Michigan, 4,000 in the state). (Tr. at 407.) Additional limitations did not preclude work in the guard or lobby position, or as a surveillance system monitor (1,400 jobs in southeast Michigan, 2,800 in the state). (Tr. at 408.) Final exertional limitations of standing for "a couple of minutes, walk[ing] for two feet, [sitting] one hour with discomfort, and lift[ing] five pounds" would prevent all competitive work. (Tr. at 408-09.) The entire testimony in the transcript covers less than nine pages. (Tr. at 401-09.)

Augmented by the transcript and a smattering of newly submitted medical records–many of which are from well after the end of the insured-status period–the Appeals Council now thought the Record sufficed. (Tr. at 7-9.) On March 21, 2013, the Council denied review, making the ALJ's decision the Commissioner's final decision. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). Plaintiff filed the present case on April 4, 2013, seeking review of the Commissioner's decision. (Doc. 1.)

**B.     Standard of Review**

The Social Security system has a two-tiered structure in which the administrative agency handles claims and the judiciary's subsequent review merely ensures that substantial evidence supports the agency's factual determinations. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The administrative process provides multiple opportunities for reviewing the state agency's initial determination. The Plaintiff can first appeal the decision to the Social Security Agency, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142

(1987). Once this administrative process is complete, an unsuccessful claimant may file an action in federal district court. *Sullivan v. Zebley*, 493 U.S. 521, 524-28 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final administrative decision. The statute limits the scope of judicial review, requiring the Court to "'affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court's review of the decision for substantial evidence does not permit it to "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The court can only review the record before the ALJ. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). "[T]he . . . standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Longworth*, 402 F.3d at 595 (quoting *Warner*, 375 F.3d at 390). "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

A court's review of the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))).

### C. Governing Law

"'The burden lies with the claimant to prove that she is disabled.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 353). *Accord Boyes v.*

6

*Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. § 401-34, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381-1385. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474. *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).   D   .

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2009, and had not engaged in substantial gainful activity during her insured-status period, beginning on the alleged onset date, February 15, 2005. (Tr. at 20.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: "rheumatoid arthritis of the fingers and foot; tendon damage and muscle ligament disorder and fascia; and cervical spine impairment." (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in

8

the regulations. (Tr. at 17-18.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 21.) The ALJ also found that Plaintiff was forty-two years old on the last insured date, which put her in the "younger age" category. (Tr. at 22.) *See* 20 C.F.R. §§ 404.1563, 416.963. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work in jobs existing in significant numbers in the regional economy. (Tr. 18-21, 22-23.)

  **E.** **Analysis and Conclusions**

  **1.** **Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she had the residual functional capacity ("RFC") to perform a limited range of sedentary work:

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can lift/carry 8 pounds occasionally and 5 pounds frequently; requires a sit/stand option; is limited to occasional bilateral fine manipulation; cannot climb ladders, scaffolds, or ropes; can occasionally climb ramps or stairs; and must avoid moderate exposure to hazards.

(Tr. at 21.) Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

  **2.** **Substantial Evidence**

9

If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff moved for summary judgment on August 28, 2013, arguing that the ALJ failed to properly analyze whether Plaintiff met or equaled an impairment listed in the regulations. (Docs. 11 at 8-13.) Moreover, she claims that the Record lacks a required medical consultant opinion on this issue. (Tr. at 12-13.) Finally, she contends the ALJ "applied an erroneous standard of disability" in his decision. (Tr. at 13-14.)

The Court is thus faced with examining the ALJ's findings without the benefit of the usual hearing transcript. This gap in the Record prevents meaningful review and therefore I recommend vacating the Commissioner's decision and remanding for a new hearing where Plaintiff will testify about her impairments and functional limitations.

Remand here is appropriate under "sentence four" of 42 U.S.C. § 405(g).[2] The absence of any hearing testimony from Plaintiff, other than a few answers concerning her health in 2012,

---

[2] Though "sentence six" is a frequent basis for remand in similar cases, the Commissioner has not asked for remand under that provision and the Court is powerless to provide it without such a request. 42 U.S.C. § 405(g). *See also Melkonyan v. Sullivan*, 501 U.S. 89, 98-102 (1991) ("[R]emand orders must either accompany a final judgment affirming, modifying, or reversing the administrative decision in accordance with sentence four, or conform with the requirements outlined by Congress in section six."); S. Rep. No. 96-408, at 58. (1979) ("[U]nder existing law, the court itself, on its own motion or on motion of the claimant, has discretionary authority 'for good cause' to remand the case back to the ALJ. It would appear that . . . some remands are undertaken because the judge disagrees with the outcome of the case even though he would have to sustain it under the 'substantial evidence rule.'"). Nonetheless, courts cite "section six" law to support "sentence four" substantial remands, and thus cases from each are relevant to the following analysis. *See, e.g.*, *Bianchi v. Sec'y of Health & Human Servs.*, 764 F.2d 44, 46-47 (1st Cir. 1985) (citing legislative history on "sentence six" "good cause" and deciding to remand under substantial evidence analysis).

10

renders adequate review impossible. The Commissioner has a statutory duty to file with her answer to any complaint "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." *Id.* The certified record contains all exhibits and "a verbatim recording of all testimony offered at the hearing . . . ." 20 C.F.R. § 405.360. The findings and decision here were based, in part, on Plaintiff's testimony at the 2009 hearing. (Tr. at 21, 261-64.) That testimony is not in the Record. (Tr. at 273, 278.)

The Administration's internal rules discuss how to certify incomplete records like the present one:

> If a record is not complete, it is not a 'full and accurate' record of proceedings relating to the claim under litigation. When the record is incomplete, the [Administration] must use a modified certification . . . and footnote any missing material on the index to the record . . . . Such deficiencies may include . . . [a] missing transcript of oral hearing, missing translation, and 'inaudible portions' in the transcript of oral hearing which are significant in length or are the result of equipment malfunction.
>
> If the missing item is not pertinent to the litigated claim, the record is certified as 'full and accurate.' However, the record is footnoted . . . when [that] missing item is mentioned . . . .

Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual, § I-4-1-56 (last updated Sept. 13, 2005). No footnotes or notations indicating an incomplete record appear in the certified Record provided in this case. Instead, the certification asserts that the Record is "a full and accurate transcript of the entire record of proceedings relating to this case." The only mention of the missing transcript is made in passing in Defendant's motion for summary judgment. (Doc. 15 at 2.)

These errors provide cause for remand. Even as they tried to reduce the remand rate, the legislators who reshaped 42 U.S.C. § 405(g) in 1980 realized the importance of evidence from hearings. *See, e.g.*, *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987) ("Congress plainly intended that remands for good cause should be few and far between, that

11

a yo-yo effect be avoided . . . ."); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) ("It is clear from our reading of the legislative history that this provision was enacted, at least in part, to limit the discretion of federal judges to remand for reconsideration of new evidence."). The Conference Agreement to the amendments noted,

> there are sometimes procedural difficulties which prevent the Secretary from providing the court with a transcript of administrative proceedings. Such a situation is an example of what could be considered 'good cause' for remand. Where, for example, the tape recording of the claimant's oral hearing is lost or inaudible, or cannot otherwise be transcribed . . . good cause would exist to remand the claim to the secretary for appropriate action to produce a record which the courts may review under 205(g) of the Act.

H.R. Conf. Rep. No. 96-944, at 59 (1980).

Courts consistently send cases back to the Commissioner when a significant piece of evidence is missing from the record. The Second Circuit explained, "courts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative, and available evidence was either not before the Secretary or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of claimant's application." *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975).

This is particularly true when the absent evidence is hearing testimony, or even just key portions of it. In a case where the record lacked a hearing transcript, the Fifth Circuit felt "constrained to conclude that the district court did not abuse its discretion in finding that the missing record constituted good cause for remanding the case . . . ." *Dudley v. Astrue*, 246 F. App'x 249, 252 (5th Cir. 2007). The First Circuit explained in a similar case that where the transcript of a medical expert's testimony was "virtually unintelligible," the "court [was] precluded from complying with its 'responsibility to scrutinize the record in its entirety' to determine whether

substantial evidence supports the Secretary's findings." *Bianchi v. Sec'y of Health & Human Servs.*, 764 F.2d 44, 46 (1st Cir. 1985) (*quoting Millet v. Schweiker*, 662 F.2d 1199, 1201 (5th Cir. 1981)). *See also Pratts v. Chater*, 94 F.3d 34, 37-38 (2d Cir. 1996) (remanding where "the hearing record upon which the ALJ relied was significantly compromised by the failure to transcribe a portion of [the medical expert's] testimony"); *Brown v. Sullivan*, 912 F.2d 1194, 1195 (10th Cir. 1990) ("On the Secretary's motion, the case was remanded to the Secretary for a new hearing, because an inaudible tape precluded preparation of the administrative record."); *Scott v. Bowen*, 808 F.2d 1428, 1430 (11th Cir. 1987) (noting that the district court remanded for a new hearing "on the ground that the tape recording of the [prior] hearing was inaudible"); *Taylor v. Heckler*, 769 F.2d 201, 201-02 (4th Cir. 1985) (noting that district court remanded where the hearing tape was inaudible); *Mullen v. Sec'y of Health & Human Servs.*, 878 F. Supp. 682, 683 (D. Del. 1995) (remanding where three minutes out of the twelve minute hearing were inaudible); *Davila on Behalf of Davila v. Shalala*, 84 F. Supp. 1141, 1144-46 (S.D. N.Y. 1994) (collecting cases where courts remanded for absent or inaudible hearing recordings and tapes); Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law & Procedure in Federal Court* § 9:40 (2014) ("The law is clear: when the entire transcript is missing or the tape inaudible, the case must be remanded for a new administrative hearing.").

The Eighth Circuit has taken a slightly harder line requiring proof that the absence of the evidence prejudices the plaintiff or prevents judicial review: "[a]bsent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record." *Williams v. Barnhart*, 289 F.3d 556, 557-58 (8th Cir. 2002). *See also Marshall v. Schweiker*, 688 F.2d 55, 56

(8th Cir. 1982) ("Here . . . there is more than enough evidence to support the Secretary's decision and no indication that the illegible records would aid the appellant."). The prejudice requirement, however, is not an insurmountable barrier. As the Eleventh Circuit stated, "[t]he lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits." *Brown v. Shalala*, 44 F.3d 931, 935-36 (11th Cir. 1995). *See also Hippensteel v. Soc. Sec. Admin.*, 302 F. Supp. 2d 382, 389 (M.D. Penn. 2001) ("[B]ecause we must strictly construe the agency's responsibility to develop an administrative record and explicitly weigh all evidence, we find persuasive Plaintiff's argument that the missing testimony itself establishes prejudice.").

In most cases denying remand, the missing evidence is immaterial, a page or two missing from a report or a few "inaudible" lines of dialogue. *See, e.g.*, *Ward v. Hecker*, 786 F.2d 844, 848 (8th Cir. 1986) ("The gaps appear very small, . . . at most a few words at a time. Although distracting, the gaps did not interfere with comprehension of the testimony to the extent that would hinder fair review."); *Earls v. Callahan*, No. 96-1200-JTM, 1997 WL 624859, at *5 (D. Kan. Sept. 8, 1997) (same); *Jones v. Comm'r of Soc. Sec.*, No. 1:10-CV-164, 2011 WL 1527159, at *6 (E.D. Tenn. Apr. 4, 2011) (refusing to remand where the missing evidence was a few lines allegedly spoken at the end of the hearing after plaintiff's counsel said they had nothing further to add), *adopted by* 2011 WL 1526978 (Apr. 20, 2011). Rarely, an ALJ's description of the missing evidence in the written decision allows for judicial review by sufficiently describing the contours and substance of the evidence. *See, e.g.*, *Andres v. Bowen*, 870 F.2d 453, 455-56 (8th Cir. 1989) (declining to remand where "the ALJ's written decision in effect reconstituted the missing portion

14

of the hearing transcript"); *Hynek v. Astrue*, No. 10-149-BLG-CSO, 2012 WL 460473, at *8 (D. Mont. Feb. 13, 2012) (same).

Other cases, in this Circuit and elsewhere, have grappled with the issue; some mention the prejudice standard but readily find it satisfied, and others emphasize that remand is proper where the lack of evidence impedes judicial review. *See, e.g.*, *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) ("Before ordering a remand, we will review the administrative record as a whole to determine if it is inadequate or incomplete or 'show[s] the kind of gaps in the evidence necessary to demonstrate prejudice.'" (quoting *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997))); *Keenan v. Comm'r of Soc. Sec.*, No. 1:12CV439, 2013 WL 440985, at *2 (N.D. Ohio Feb. 4, 2013) ("Without an accurate transcript of the hypothetical posed to the vocation expert, this Court cannot conclude that there is substantial evidence to support the ALJ's conclusion.").

One court in this Circuit, trying to interpret a hearing transcript with significant inaudible portions, remanded under "sentence four," stating that when a court "concludes that the record before it is not the full and complete record upon which the agency based its decision, the [c]ourt may presumably reverse the decision in light of the Commissioner's failure to provide the necessary materials to the [c]ourt to allow meaningful review." *Collins v. Astrue*, No. 06-211-GFVT, 2008 WL 817332, at *6 (E.D. Ky. Mar. 21, 2008). *See also Austermiller v. Astrue*, No. 3:10CV1697, 2010 WL 5553865, at *2 (N.D. Ohio Dec. 1, 2010) (same). Two Sixth Circuit cases support the *Collins* court's decision. In the first, the district court below had remanded under "sentence six" because the Commissioner lost the file and had to reconstruct it. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 481 (6th Cir. 2006). The Sixth Circuit denied Plaintiff's request for a second remand, but noted that if the claimant had convinced the court that

15

"identifiable original evidence was indeed omitted from the reconstructed record, we are confident that a statutory remedy [under Section 405(g)] would have been available to rectify this omission." *Id.* at 484 n.8. *See also id.* at 488 ("We readily acknowledge [claimant's] concern that the Commissioner's loss of the administrative record injects a troublesome element of uncertainty into the proceedings, and unduly shifts the focus from ordinary 'substantial evidence' review to litigation over the proper content of the reconstructed record.").

The second Sixth Circuit case resembles the present situation. *Russell v. Comm'r of Soc. Sec.*, 32 F. App'x 737 (6th Cir. 2002). There, the Commissioner lost the file, was able to reconstruct most of it, but omitted records the ALJ relied on in his decision. *Id.* at 738. The claimant pressed on with the appeals process rather than go through the ordeal of recreating the evidence once again. *Id.* The court cited the Commissioner's duty under 42 U.S.C. § 405(g) to file a certificate, and held that, "[b]ecause the Commissioner has not filed such a transcript, but submitted a reconstructed file which lacks much of the evidence relied upon by the administrative law judge, it is appropriate for us to remand for a rehearing pursuant to sentence four of section 405(g)." *Id.* at 739.

The lacuna here likewise swallows up too much necessary evidence to write it off as an inconsequential omission. Plaintiff's testimony on her daily activities or capabilities would directly relate to the listings she says her impairments meet or equal. The ALJ's first decision, in 2010, briefly recounted parts of Plaintiff's testimony, including some reports of pain and capacities but not daily activities. (Tr. at 263.) He then concluded in a single line, "Claimant's testimony is found to be exaggerated and unsupported the medical evidence." (Tr. at 264.) His second set of findings, the relevant one for present purposes, pared down the analysis further, noting a few of her

16

generalized complaints and limitations, ignoring her daily activities, and then deciding, "Claimant's allegations are not found to be entirely credible, as the medical evidence of record through the date last insured does not establish limitations to such a degree . . . ." (Tr. at 21.)

The first hearing occurred almost precisely three years before the second decision. (Tr. at 27, 261.) In the interim, presumably soon after the first hearing, the recording and transcript were lost. To craft his second decision, the ALJ stretched back three years into his memory, perhaps aided by personal notes, but none of those are before the Court or are comparable to a transcript. The decisions also show small inconsistencies and differences that, while largely irrelevant if the record included a transcript, indicate Plaintiff's testimony covered more than the ALJ summarized. In the first decision, the ALJ wrote that Plaintiff testified she could lift five pounds, could "sit for an hour before experiencing discomfort," and that an MRI showed a central disc protrusion and an impingement. (Tr. at 264). In the second decision, she reportedly said she could lift four pounds and "sit for 1 hour per day," and the ALJ did not discuss the MRI. (Tr. at 21.) Undisputedly minor, these niggling discrepancies nonetheless suggest the obvious: Plaintiff's testimony encompassed more than the ALJ relates. In light of her arguments here, her testimony is relevant–indeed necessary–for a proper review.

In particular, Plaintiff's listing argument cannot be reviewed without her testimony. She asserts her rheumatoid arthritis met or equaled Listing 14.09A. (Doc. 11 at 10-11.). That listing requires persistent inflammation or deformity of (1) a major peripheral weight-bearing joint "resulting in the inability to ambulate effectively (as defined in 14.00C6)," or (2) a major peripheral joint "in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7)." 20 C.F.R. Part 404, Subpart P, Appendix 1, §

17

14.09(A)A. The "inability to ambulate effectively" is defined by reference to Listing 1.00B2b. *Id.* § 14.00(C)(6). This inability represents "an extreme limitation of the ability to walk," which is measured by the claimant's "ability to independently initiate, sustain, or complete activities," and the use of assistive devices is also relevant to the analysis. *Id.* § 1.00(B)(2)(b). The listing goes on to provide various examples of ineffective ambulation, all of which deal with daily activities and other matters that need to be fleshed out by testimony. *Id.* Likewise for the alternative prong–"inability to perform fine and gross movements effectively." *Id.* § 1.00(B)(2)(c).

Plaintiff's claim has plodded through the Administration, and now the courts, for nearly a decade. Her child, born a few years into the proceedings, (Tr. at 311), has now reached grade-school age while the case drones on in nearly the same procedural position. This is a significant burden on any claimant, whether they would be successful on the merits or not, and the Court's recommendation here does not seek to add to it. Hopefully, an expedited resolution can be reached.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ be vacated and the case remanded to the Commissioner for a new hearing.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y*

*of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 30, 2014                                    /S PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge